Putnam J.
delivered the opinion of the Court. At the suggestion of the closing counsel for the defendants, we have examined this case upon its merits, arising from the true construction of the indenture upon which the action is brought.
It was contended with great ability for the defendants, that Daniel Jackson, the husband, in consideration of $ 2500 secured to him, released all his interest and control in and over the estate of his wife ; that the effect of a recovery in this suit will be, to place the trust fund in the hands of the plaintiff, who would so become the debtor to the wife, and then by the operation of the law, without any further act on her part, the legal right to the money would vest in the husband, and so the manifest intent of the settlement would be defeated : and that the same effect would take place, if the plaintiff should pay the money into the hands of the wife ; it would by operation of law become absolutely the property of the husband ; and it was strongly urged, that this would be directly contrary to the covenant on the part of the plaintiff, to use his best endeavours to have the covenants of the defendants performed ; that there is no provision requiring the plaintiff to pay out any thing, and the money would rest in his hands for his own use (which would be manifestly wrong), or as the property of the wife, and so necessarily for the use of the husband by force of the law j that the wife bad not a general, but a limited power of appointment as set forth in the seventeenth plea, viz. to be exercised always in such manner as that the money should not be subject to the control, or go to the use, or be liable to pay the debts of the husband ; and that the suit was by collusion and fraud with the husband, to enable him to get the possession and control of the property.
The nineteenth plea presents the point last mentioned, and alleges that the request and direction of the wife to pay over the money to her, &c. were obtained from her by the husband, and others, in collusion with him, by fraud, that the husband might get the possession and control. The replication avers, that the request and direction, &c., were freely made, &c., traversing, that they were obtained by fraud and collusion, &c *272 The defendants demur on the ground that the plaintiff, in his replication, has tendered an immaterial issue. Now if that were the fact, the fault would seem to be in the plea, as containing no issuable allegation. But it is not so. Fraud and collusion might be fatal to the recovery of the plaintiff. And the plaintiff has denied them, and given the defendants an opportunity to try the truth of the matter by a jury. The defendants, without any apparent good reason, have declined that trial. So that fraud and collusion are to be put out of the case.
It was also argued for the defendants, that the husband was directly interested, for the reasons above suggested, and should therefore have been excluded from testifying. And that would be the legal result, if the positions taken by the counsellor the defendants are tenable. But after much consideration, we think the wife had a general power of appointment over the fund. We think the cases cited by the counsel for the defendants do not maintain their defence.
In Anderson v. Dawson, 15 Ves. 532, and Socket et ux. v. Wray et al. 4 Bro. C. Cas. 483, the wife, by the terms of the settlements, was to have the income of the trust fund during life, and the capital was to be transferred according to her will. The court held in these cases, that she had no power over the capital but by a revocable act, in nature of a will. But the power reserved to the wife, in the case at bar, is not so restricted. She has a power to sell the estate or not. If not sold, she was to have the income, and the trustee was at any time during her lifetime, to sell and convey the property to such persons, and for such price, as she should direct, and pay the proceeds either to her, or her appointee or appointees, for her own use, without the control of the husband. She has the power of investing the proceeds in such securities, &c., as she shall think proper, and has the same power to dispose of the securities, &c., as was reserved over the original estate. Now the jury have found, substantially, that the wife did direct S. Learned to convey the estate for $22,500 ; that he sold it accordingly and received the money, securities, &c., for the same, and had them at the time of the commencement of this action ; that she has directed S. Learned to pay over to her, *273 for her own separate use, the money, certificates, &c., in writing under her hand, at a reasonable time and place before the commencement of the action ; that S. Learned had the money, &c., in his hands, at the time of the demand, and refused to deliver and pay it over, &c. This action is brought at the request of the wife, but in the name of the plaintiff, who must have a right to recover on these facts, provided she has a general power of appointment and there were competent testimony to support the verdict upon the issues in fact which were found for the plaintiff. But the indenture of settlement remains in full force ; the husband has consented that his wife shall have the absolute disposition of the property, without his control or the claim of his creditors. The plaintiff is to recover the money for the use of the wife, subject to her direction and appointment, when in his hands-, as it is or was when in the hands of S. Learned.
Upon that view of the case, the testimony of the husband was properly received. The recovery will not alter or affect his legal rights. It is altogether contingent, whether the wife will make any appointment in his favor, after the money shall have been recovered by the plaintiff, and without such new appointment, the husband cannot touch the property. Fitch v. Hill et al. 11 Mass. R. 286, [Rand’s ed. 287, note ;] 1 Phil. Ev. (N. York ed.) 71, and cases cited.[1]
But it was contended, that the evidence does not prove a demand in a reasonable time prior to the commencement of the action. The demand was made at 40 minutes past 6 o’clock, P. M., when the defendant, S. Learned, was six miles from his home, and the night was dark and stormy, and the writ was served upon the other defendant immediately after midnight. Whether this proceeding were reasonable or not, must depend upon the circumstances of the case. It is proved that S. Learned declared that he had got the property and meant to keep it, and Thomas Learned said that the plaintiff would not have got the property to attach, if he had had (what he called) *274 reasonable notice. It comes with a very ill grace from the defendants to complain of a want of reasonable notice, when the only use of more time would have been to have devised ways and means of evading payment. If a longer time had been given, it would confessedly have been employed by Thomas Learned in placing his property in such a situation as to have prevented the plaintiff from obtaining security. Besides, when the demand was made, the defendant, S. Learned, for aught that appears, might have complied, with it in an hour or two. No suggestion like that now urged was made. He did not ask for more time, but put the case upon other grounds. “He had Mrs. Jackson’s daughter to support. He meant to keep the money.” We are all satisfied from the cases cited, and the reasons of the law applicable to this subject, that this objection to the verdict cannot be maintained.
And upon the facts which have been thus found by competent evidence, and the true construction of the indenture, we are all of opinion that the judgment must be rendered for the plaintiff upon the verdict.

 See White v. Holman, 3 Fairfield, 160; City Bank v. Bangs, 3 Paige, 37, 38; Webster v. Harper, 7 N. Hamp. R. 594. The decision in the case of Richardson v. Learned, is held to be of questionable authority, in 2 Phil. Ev. (Cowen &. Hill's ed.) 96, 149, 150, notes.